NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JAMAR COLEY, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 17-5585 (MAS) (DEA) |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| DAMIAN HALL, | : | |
| | : | |
| Defendant. | : | |

**SHIPP, District Judge**

This matter comes before the Court on Defendant Damian Hall's ("Hall") motion to dismiss. (ECF No. 28.) Plaintiff Jamar Coley ("Plaintiff") filed opposition (ECF No. 30) and Hall replied (ECF No. 31). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Hall's motion to dismiss is DENIED.

### I. Background[1]

Plaintiff Jamar Coley ("Plaintiff"), a forty-four (44) year old African-American male, was employed by New Jersey Transit ("NJT") from on or about August 21, 1996 until August 20, 2015, the date of his termination. (Am. Compl. ¶ 10, ECF No. 9.) Plaintiff held the position of Bus Operator upon commencement of his employment with NJT. (*Id.* ¶ 11.) On or about January 2, 2001, Plaintiff was promoted to Repairperson, the position he held at the time of his termination. (*Id.*) Plaintiff maintained satisfactory job performance during his employment. (*Id.*)

---

[1] For the purposes of this motion to dismiss, the Court accepts as true and summarizes the facts alleged in the Amended Complaint. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

Hall, a Caucasian individual and Superintendent at NJT, was Plaintiff's direct supervisor. (*Id.* ¶ 12.) Plaintiff alleges that Hall engaged in a practice and pattern of discriminating against African-American employees based upon their race. (*Id.*) In particular, Plaintiff states that Hall disciplined "African-American employees for arriving only one (1) minute late to their shift[,]" but did not subject similarly situated non-African American employees "to such strict enforcement of the attendance policy." (*Id.* ¶ 13.) Plaintiff also alleges that Hall "routinely and unjustifiably denied overtime to African-American employees[,]" including Plaintiff, and that "similarly situated non-African-American employees were not subjected to similar treatment." (*Id.* ¶ 14.)

In response, Plaintiff filed a complaint of race discrimination with NJT's Equal Employment Opportunity Representative in or around May of 2015. (*Id.* ¶ 15.) Plaintiff alleges that NJT neither investigated the complaint nor caused the conduct to cease (*id.*) and because of this complaint, "Defendants subjected Plaintiff to a campaign of retaliation" that included "unjustifiably criticizing Plaintiff's work performance" (*id.* ¶ 16).

On or about August 20, 2015, Hall terminated Plaintiff's employment for "sleeping during work hours[,]" although Plaintiff asserts that he was not sleeping. (*Id.* ¶ 17.) Moreover, Plaintiff alleges that "numerous similarly situated, Caucasian Repairpersons, who are also directly supervised by Defendant Hall . . . routinely sleep during work hours[,] yet have not been subjected to similar discipline by Defendant Hall." (*Id.* ¶ 18.)

On July 31, 2017, Plaintiff initiated this action (Compl., ECF No. 1), and on November 10, 2017, Plaintiff filed an Amended Complaint that named both NJT and Hall as defendants (*see generally* Am. Compl.). The Amended Complaint brings race discrimination and retaliation claims pursuant to 42 U.S.C. § 1981 and the New Jersey Law Against Discrimination

("NJLAD"). On October 20, 2017, then-defendant NJT moved to dismiss. (ECF No. 7.) On February 27, 2018, the Court granted the motion and dismissed the Amended Complaint as to NJT without prejudice. (Feb. 27, 2018 Order, ECF No. 24.) On March 8, 2018, Hall was served with the Amended Complaint. (Aff. of Service, ECF No. 25.) Hall requested an extension of time to move or answer (ECF No. 27) and the Clerk granted this request, extending the due date to April 9, 2018 (Mar. 15, 2018 Docket Entry). On April 9, 2018, Hall filed the instant motion to dismiss. (ECF No. 28.)

## II.     **Legal Standard**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "[review] the complaint to strike conclusory allegations[.]" *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff[.]" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556

3

U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

## III.  Discussion

### A.  Section 1981

Section 1981 provides:

> (a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

> (b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

> (c) Protection against impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981. Congress added subsection (b) to define the phrase "make and enforce contracts" when it passed the Civil Rights Act of 1991. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 373 (2004).

Section 1981 does not contain a statute of limitations. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987). "The Supreme Court has held that civil rights actions arising under § 1981 as amended by the Civil Rights Act of 1991 are governed by the four-year statute of limitations prescribed in 28 U.S.C. § 1658." *Pintor v. Port Auth.*, No. 08-2138, 2009 WL 2595664, at *2

(D.N.J. Aug. 20, 2009) (citing *Jones*, 541 U.S. at 382). If, however, a particular cause of action "would have been actionable under the pre-1991 version of 42 U.S.C. § 1981[,]" then the applicable state statute of limitations governs the claim. *Id.*; *see Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987).

### 1. Parties' Positions

Hall asserts that all of Plaintiff's claims are time barred. (Def.'s Moving Br. 6-10, ECF No. 28-1.) Because Plaintiff sues Hall in his individual capacity, and individual liability existed in the pre-1990 version of § 1981, Hall asserts that the statute of limitations for New Jersey personal injury actions applies to Plaintiff's § 1981 claims. (Def.'s Reply Br. 3-6, ECF No. 31.) Further, Hall claims that a two-year statute of limitations applies to Plaintiff's NJLAD claims as well. (Def.'s Moving Br. 8-10.) The statute of limitations for all claims, according to Hall, began to run on August 20, 2015, the date of Plaintiff's termination, and Plaintiff filed an Amended Complaint on November 10, 2017, which was eighty-two days late. (*Id.* at 8-9.) Alternatively, Hall argues that after dismissing the § 1981 claims, the Court should decline to exercise supplemental jurisdiction over Plaintiff's NJLAD claims. (Def.'s Reply Br. 6-7.)

Plaintiff in opposition asserts that his claims are not time barred because: (i) his § 1981 claims are governed by a four-year statute of limitations; and (ii) his NJLAD claims against Hall relate back to Plaintiff's original Complaint, filed on July 31, 2017, and are, therefore, timely. (Pl.'s Opp'n Br. 4-5, 9-13, ECF No. 30.)

### 2. Analysis

Here, if Plaintiff could have brought his claim under the language of § 1981 prior to its amendment in 1991, then New Jersey's two-year statute of limitations for personal injury actions applies. The Court finds that Hall has not carried his burden to demonstrate that Plaintiff's

§ 1981 claims are time barred based on an application of the two-year statute of limitations. In support of his argument, Hall highlights cases in which plaintiffs who were denied tenure brought § 1981 claims. Hall cites the per curiam and unreported decision, *Ke v. Ass'n of Pa. State College & Univ. Faculties*, 447 F. App'x 424 (3d Cir. 2011), in which the Third Circuit applied a two-year statute of limitations to the plaintiff's § 1981 claim arising out of his denial of tenure. (Def.'s Moving Br. 7.) Hall further relies on *Al-Khazraji v. Saint Francis College*, 784 F.2d 505 (3d Cir. 1986), to indicate that: (i) individual liability was available pursuant to the previous iteration of § 1981; (ii) here, Plaintiff brings claims pursuant to the older text; and (iii) New Jersey's two-year statute of limitations governs. (Def.'s Reply Br. 3-5.) The plaintiffs' claims in both cases, however, are factually distinguishable from Plaintiff's claims in this case. The language "make and enforce contracts," undefined in § 1981 prior to the Civil Rights Act of 1991, may have provided a cause of action for plaintiffs seeking redress for denials of tenure. Plaintiff here, however, brings claims that are based on alleged discrimination during his employment and retaliation for registering a complaint. (*See* Compl. 3-6.) In addition, both parties acknowledge that Plaintiff's claims accrued, at the latest, on August 20, 2015, the date of his termination. (*See* Def.'s Moving Br. 9, Pl.'s Opp'n Br. 9-10.) Accordingly, if a four-year statute of limitations applies, Plaintiff's claims are not timed barred. Based on the arguments raised in the briefing, the Court finds that Hall has not carried his burden to demonstrate that Plaintiff's § 1981 claims are untimely and denies Hall's motion to dismiss Counts I and II.

## B. NJLAD

A two-year statute of limitations applies to NJLAD claims. *Lawson v. Passaic Cty. & Vicinity Carpenters & Millwrights Local 124*, 50 F. App'x 73, 76 (3d Cir. 2002) (citing *Montells*

*v. Haynes*, 627 A.2d 654 (N.J. 1993)). Federal Rule of Civil Procedure 15(c) governs relation back of amendments to pleadings and provides, in pertinent part:

> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
>
>> (A) the law that provides the applicable statute of limitations allows relation back;
>>
>> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>>
>> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>>
>>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>>
>>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Rule 15(c)(1)(C) requires that a proposed defendant receive actual or constructive notice of the action within 120 days of the filing of a complaint. *Browning v. Safmarine, Inc.*, 287 F.R.D. 288, 290 (D.N.J. 2012) (citing Fed. R. Civ. P. 4(m)). Rule 15 also mandates that a "proposed defendant have actual or constructive knowledge that he or she would have been named but for a mistake on the part of the plaintiff." *Id.*

"Rule 15(c)(3) notice does not require actual service of process on the party sought to be added; notice may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 195 (3d Cir. 2001) (citations omitted). Timely notice may be inferred based on the "shared attorney" method, the existence of a shared attorney between the original and proposed new defendant, or an "identity of interest"

method. *Id.* at 196-200. As to the "shared attorney" method, the relevant inquiry "is whether notice of the institution of this action can be imputed to [the defendant sought to be named] within the relevant 120-day period . . . by virtue of representation [he] shared with a defendant originally named in the lawsuit." *Garvin v. City of Phila.*, 354 F.3d 215, 223 (3d Cir. 2003) (alterations in original) (quoting *Singletary*, 266 F.3d at 196). "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Singletary*, 266 F.3d at 197 (quoting 6A Charles A. Wright et al., Federal Practice and Procedure § 1499, at 146 (2d ed. 1990)).

### 1.    Parties' Positions

Both parties do not contest that Plaintiff's NJLAD claims accrued on the date of his termination. (*See* Def.'s Moving Br. 9; Pl.'s Opp'n Br. 9.) In his motion, Hall does not squarely address the Rule 15 framework, and instead, argues that Plaintiff's NJLAD claims do not relate back to the filing of the original complaint because Plaintiff: (i) has not put forth an explanation for his untimely filing; and (ii) fails to present any evidence to show Hall knew or should have known about the claims at issue. (Def.'s Moving Br. 7-8.) In opposition, Plaintiff asserts that his NJLAD claims against Hall, raised for the first time in the Amended Complaint filed on November 10, 2017, are timely because all of Rule 15's conditions are satisfied, and the claims relate back to the filing of Plaintiff's original Complaint on July 31, 2017. (Pl.'s Opp'n Br. 9-12.)

### 2.    Analysis

Here, based on a Rule 15 analysis, the Court agrees with Plaintiff. First, the Supreme Court of New Jersey has held that that two-year statute of limitations for personal injury actions

applies to NJLAD, *Haynes*, 627 A.2d at 659, and New Jersey law permits relation back, *see Kernan v. One Wash. Park Urban Renewal Assocs.*, 154 N.J. 437, 457-58 (N.J. 1998); *MSKP Oak Grove, LLC v. Venuto*, No. 10-6465, 2014 WL 4385979, at *9 (D.N.J. Sept. 5, 2014) (citing *Notte v. Merchants Mut. Ins. Co.*, 185 N.J. 490, 499 (N.J. 2006)) ("Relation back under New Jersey Court Rule 4:9-3 is to be liberally allowed."). Second, the NJLAD claims in the Amended Complaint against Hall "arose out of the conduct, transaction, or occurrence" in the "original pleading[.]" *See* Fed. R. Civ. P. 15(c)(1)(B). Third, Hall can be deemed to have "notice of the action within 120 days of the filing of [the] complaint[,]"*Browning*, 287 F.R.D. at 290 (citing Fed. R. Civ. P. 4(m)), based on both the "shared attorney" method. "[T]he fundamental issue here is whether the attorney's later relationship with the newly named defendant gives rise to the inference that the attorney, within the 120 day period, had some communication or relationship with, and thus gave notice of the action to, the newly named defendant." *Singletary*, 266 F.3d at 196-97. Based on the Court's records, Deputy Attorney General Punam Panchal Alam appeared on the docket as counsel for NJT on September 5, 2017 and Deputy Attorney General Martin Burns appeared on the docket as counsel for NJT on October 20, 2017, both within 120 days of Plaintiff's filing of the original Complaint on July 31, 2017. The same attorneys currently represent Hall. In addition, the original Complaint contains allegations that suggest an individual employee at NJT is involved in the alleged misconduct at issue. For example, paragraphs 13 and 14 of the original Complaint state:

> 13. By way of example, Defendant [NJT] habitually disciplined African-American employees for arriving only one minute late to their shift. Similarly situated non-African-American employees were not subjected to such strict enforcement of Defendant[] [NJT's] attendance policy.

> 14. By way of further example, Defendant [NJT] routinely and unjustifiably denied overtime to African-American employees including

Plaintiff. Upon information and belief, similarly situated non-African-American employees were not subjected to similar treatment.

(Compl. ¶¶ 13-14.) Accordingly, because the same attorneys that represented NJT represent Hall and the allegations in the original Complaint suggest that Plaintiff's supervisor was involved, the Court finds that Hall had notice of the action sufficient to satisfy Rule 15. Neither party explicitly addresses whether Hall will be prejudiced by defending the action on the merits; in light of the early stage of the proceedings, however, the Court finds that Hall will not be prejudiced. Finally, for the same reasons discussed above regarding the allegations in the Complaint, Hall "should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity." *See* Fed. R. Civ. P. 15(c)(1)(C)(ii).

## IV.    Conclusion

For the foregoing reasons, Hall's motion to dismiss is denied. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated:  September 19, 2018